IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONTE O'QUINN, on behalf of himself and others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) COMCAST CORPORATION, ) ) Defendant, ) | No. 10 C 2491 Judge Joan H. Lefkow |

## OPINION AND ORDER

This putative class action brought by Donte O'Quinn against Comcast Corporation ("Comcast") arises out of Comcast's alleged practice of failing to provide customers with the advertised Internet connection speed.[1] O'Quinn alleges breach of contract, unjust enrichment, violation of the Illinois Consumer Fraud and Deceptive Practices Act ("Consumer Fraud Act"), 815 Ill. Comp. Stat. § 505/1 *et seq.*, and breach of express warranty. He also seeks an accounting. Before the court is Comcast's motion to compel arbitration. For the following reasons, the motion [#14] is granted.

## BACKGROUND

Comcast provides cable television, Internet, and telephone service to customers in thirty-nine states, including Illinois. O'Quinn has been a Comcast customer since November 2008. On November 14, 2008, Paije O'Quinn signed a work order acknowledging installation of Comcast cable, Internet, and voice services at the O'Quinn residence. The work order contained the following language immediately above her signature:

---

[1] The court has jurisdiction pursuant to the Class Action Fairness Act, as codified at 28 U.S.C. § 1332(d).

> If this Work Order relates to the initial installation of services, I acknowledge receipt of Comcast's Welcome Kit(s) which contain the Comcast subscriber agreement(s), the Comcast subscriber privacy agreement and other important information about the service(s). I agree to be bound by the Comcast subscriber agreement(s) between Comcast and me for the service(s).

Farley Decl. ¶ 12 & Ex. A. O'Quinn continued as a Comcast customer until November 9, 2009, when he requested that service be terminated at this address. On December 2, 2009, Comcast installed services at O'Quinn's new residence. On this date, O'Quinn signed a service order form, which contained a similar statement to that on the November 14, 2008 work order, specifically that "I understand that the service(s) are subject to my acceptance of terms and conditions on the reverse side of this order and acceptance of Comcast's subscriber agreement(s) that will be provided to me at the time of installation of the services." *Id.* ¶ 17 & Ex. C. The service work order also has a notation that there is "no contract" between the parties. On January 6 and 16 and April 22, 2010, Comcast performed work at O'Quinn's residence. On each occasion, O'Quinn was presented with a work order that he signed containing language that he "agree[s] to be bound by the current Comcast Customer Agreement as well as any applicable Comcast acceptable use policies." *Id.* ¶ 20 & Exs. E–G.

Comcast's Vice President of Government Affairs for the Greater Chicago Region, Wendy Farley, submitted a declaration averring that Comcast policy and practice includes supplying customers with Comcast's customer agreement at the time it installs services. Additionally, as part of installing residential Internet service, the technician is required to have the customer review the agreement online and click a box indicating acceptance of it before being able to browse the Internet.

The Comcast Agreement for Residential Services ("Customer Agreement") provides for binding arbitration. The first page of the Customer Agreement (which is found on page 10 of a 39-page combined document containing both the Comcast Customer Privacy Notice and the Customer Agreement) cautions that "**[t]his Agreement contains a binding arbitration provision in Section 13 that affects your rights under this Agreement with respect to all Services.**"[2] Ex. B to Farley Decl. at 10, hereinafter "Customer Agreement." Customers accept the Customer Agreement and are bound by its terms if they use Comcast services. *Id.* Section 13, titled "**BINDING ARBITRATION**," provides,

> If you have a Dispute (as defined below) with Comcast that cannot be resolved through the informal dispute resolution process described in this Agreement, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court. Arbitration means you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury.

*Id.* at 21. Claims filed in small claims court are not subject to the arbitration provision. The party initiating arbitration has the right to choose between two arbitration organizations, the American Arbitration Association or the National Arbitral Forum, to oversee the proceeding. Listed under the subheading of "**Restrictions**" is a class waiver and limitation of recoverable damages. The class waiver provides that

> ALL PARTIES TO THE ARBITRATION MUST BE INDIVIDUALLY
> NAMED. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY
> CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS ACTION OR
> CONSOLIDATED BASIS OR ON BASES INVOLVING CLAIMS BROUGHT
> IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE
> GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL),
> OTHER SUBSCRIBERS, OR OTHER PERSONS SIMILARLY SITUATED

---

[2] The original text appears in bold typeface. Throughout this opinion, the court will reproduce the capitalization and typeface of the text as it appears in the Customer Agreement.

>UNLESS THE STATUTE UNDER WHICH YOU ARE SUING PROVIDES OTHERWISE.

*Id.* at 23. All parties also waive claims to punitive damages unless provided for by statute. Arbitration is to proceed in a location convenient to the customer. Comcast agrees to advance all arbitration filing fees and the arbitrator's costs and expenses if the customer so requests prior to the commencement of arbitration. Only if Comcast prevails in the arbitration does the customer have to reimburse Comcast for fees and costs advanced up to the extent awardable in a judicial proceeding. Comcast will pay all fees and costs that it is required to pay by law. The customer may opt out of arbitration by notifying Comcast within thirty days of first receipt of the Customer Agreement of this decision. The customer may opt out on Comcast's website or by mail. The decision to opt out is not to have an adverse effect on the customer's relationship with Comcast. O'Quinn did not opt out of the arbitration provision.

According to the arbitration provision, the arbitrator is to generally determine the validity, enforceability, and scope of the arbitration provision. The court, however, is allowed to determine the enforceability of the class action waiver. "If the class action waiver clause is found to be illegal or unenforceable, the entire Arbitration Provision will be unenforceable, and the dispute will be decided by a court." *Id.* at 23.

After O'Quinn filed suit, Comcast invoked the arbitration provision. O'Quinn, however, has refused to dismiss the lawsuit and proceed to arbitration.

## ANALYSIS

The Federal Arbitration Act ("FAA") governs questions of arbitrability in both state and federal courts. *Jain* v. *de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The FAA provides that an arbitration clause in a "contract evidencing a transaction involving commerce . . . shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The central purpose of the FAA is to "ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono* v. *Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 53–54, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995) (citation omitted) (internal quotation marks omitted). "[W]hen a contract contains an arbitration clause, a strong presumption in favor of arbitration exists and courts have no choice but to order arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *CK Witco Corp.* v. *Paper Allied Indus., Chem. & Energy Workers Int'l Union,* 272 F.3d 419, 421–22 (7th Cir. 2001) (citation omitted) (internal quotation marks omitted).

The party opposing arbitration bears the burden of establishing why the arbitration provision should not be enforced. *Green Tree Fin. Corp.-Ala.* v. *Randolph*, 531 U.S. 79, 91–92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000). "Like other contracts, [arbitration provisions] may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Center, W., Inc.* v. *Jackson*, --- U.S. ----, 130 S. Ct. 2772, 2776, 177 L. Ed. 2d 403 (2010) (quoting *Doctor's Assocs., Inc.* v. *Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996)). In determining the validity of an arbitration provision, the court applies state contract law. *Cont'l Cas. Co.* v. *Am. Nat'l Ins. Co.*, 417 F.3d 727, 730 (7th Cir. 2005).

O'Quinn argues that the arbitration provision is procedurally and substantively unconscionable and thus should not be enforced. To be unenforceable as unconscionable under Illinois law, a provision may be either procedurally or substantively unconscionable, or a

combination of both. *Razor* v. *Hyundai Motor Am.*, 854 N.E.2d 607, 622, 222 Ill. 2d 75, 305 Ill. Dec. 15 (2006). Class action waivers are not *per se* unconscionable, with unconscionability determined on a case-by-case basis. *Kinkel* v. *Cingular Wireless LLC*, 857 N.E.2d 250, 278, 223 Ill. 2d 1, 306 Ill. Dec. 157 (2006)

I. **Procedural Unconscionability**

"Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." *Razor*, 854 N.E.2d at 622. Factors to be considered include "the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print." *Kinkel*, 857 N.E.2d at 264 (quoting *Frank's Maint. & Eng'g, Inc.* v. *C.A. Roberts Co.*, 408 N.E.2d 403, 410, 86 Ill. App. 3d 980, 42 Ill. Dec. 25 (1980)).

O'Quinn argues that the arbitration provision, including the class waiver, is procedurally unconscionable because he was not provided with notice of the provision and the provision itself is hidden in the Customer Agreement. He claims that he does not recall receiving a copy of the Customer Agreement, that when he did sign service or work orders, it was always after service was complete and upon being informed that he was signing only to indicate that the service technician performed the requested work, and that he was never read the arbitration provision or directed to view the terms of the Customer Agreement online. Comcast has presented evidence through the declaration of Wendy Farley, a Comcast employee who oversees the distribution of the Customer Agreement and other legal notifications to customers within the Greater Chicago

6

region, that Comcast's routine practice is to provide customers with the Customer Agreement at the time services are installed and to require the customer to click a box accepting the Customer Agreement in order to access Comcast's Internet service for the first time. O'Quinn's denial is not enough to overcome the presumption that Comcast's service technician provided O'Quinn (or Paije O'Quinn, who signed the initial work order) with the Customer Agreement. *See Boomer* v. *AT&T Corp.*, 309 F.3d 404, 415 n.5 (7th Cir. 2002) (presuming that plaintiff received the customer agreement where defendant presented proof that proper mailing procedures were used to send the agreement and plaintiff only claimed not to remember receiving it); Fed. R. Evid. 406 ("Evidence of . . . the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the . . . organization on a particular occasion was in conformity with the . . . routine practice.").

      Comcast is not required to have read the arbitration provision aloud to O'Quinn in order for him to be bound by it. *See, e.g.*, *James* v. *McDonald's Corp.*, 417 F.3d 672, 678 (7th Cir. 2005) ("To require McDonald's cashiers to recite to each and every customer the fourteen pages of the Offical Rules, and then have each customer sign an agreement to be bound by the rules, would be unreasonable and unworkable."); *Hill* v. *Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997) ("Practical considerations support allowing vendors to enclose the full legal terms with their products. . . . If the staff at the other end of the phone for direct-sales operations . . . had to read the four-page statement of terms before taking the buyer's credit card number, the droning voice would anesthetize rather than enlighten potential buyers. Others would hang up in a rage over the waste of their time. And oral recitation would not avoid customers' assertions (whether true or feigned) that the clerk did not read term X to them, or that they did not

remember or understand it. . . . Competent adults are bound by such agreements, read or unread."). It is enough that O'Quinn was provided with the Customer Agreement and acknowledged, on various occasions, that he agreed to be bound by it. While he did not specifically acknowledge the arbitration provision, O'Quinn has not cited any authority requiring him to have done so. Form customer agreements that include arbitration provisions and other limitations on a company's liability "are a fact of modern life." *Kinkel*, 857 N.E.2d at 266. "It cannot reasonably be said that all such contracts are so procedurally unconscionable as to be unenforceable." *Id.*

O'Quinn also argues that the arbitration provision, and particularly the class waiver, is so "hidden in a maze of fine print" as to make it procedurally unconscionable. The Customer Agreement only begins on the tenth page of a 39-page document, with the first nine pages devoted to the Comcast Customer Privacy Notice. The actual arbitration provision begins on page 21 of the document. Its placement is not conspicuous. The heading of the arbitration provision ("**BINDING ARBITRATION**"), however, appears in bold print and capital letters, and the subprovisions on opting out, restrictions (including the class arbitration waiver and damages limitation), payment of arbitration fees and costs, and exclusions from arbitration are all in capital letters. The first page of the Customer Agreement also states in bold that there is a binding arbitration provision that can be found in Section 13. Together, these stylistic choices call attention to the arbitration provision, and its specifics, if a customer were to flip through the document, thereby counteracting the placement of the arbitration provision in the middle of the extensive document. *See Tortoriello* v. *Gerald Nissan of N. Aurora, Inc.*, 882 N.E.2d 157, 175–76, 379 Ill. App. 3d 214, 317 Ill. Dec. 583 (2008) (class action waiver brought to reader's

attention by provision in bold and all capital letters that an order was subject to terms and conditions listed on the reverse side).

Finally, O'Quinn argues that because the arbitration provision was provided on a take-it-or-leave-it basis, it is unconscionable. O'Quinn's characterization is not correct, however, as he had thirty days from first receipt of the Customer Agreement to opt out of the arbitration provision. Comcast clearly specified that a decision to opt out would not affect O'Quinn's relationship with Comcast or the delivery of Comcast services. Thus, despite his argument that he was only presented with the arbitration provision after agreeing to install Comcast's services and under duress, O'Quinn cannot establish that he had no choice in accepting arbitration. While he may not have had many other options for Internet service providers, his Comcast subscription would not have been affected adversely if he had opted out of arbitration. The fact that he did have this choice weighs heavily against a finding of procedural unconscionability. *See Brown* v. *Luxottica Retail N. Am. Inc.*, No. 09 C 7816, 2010 WL 3893820, at *4 (N.D. Ill. Sept. 29, 2010) ("Because of the Opt-Out option, the Agreement cannot be said to be foisted on employees on a take-it-or-leave-it basis, as is typical of contracts of adhesion."); *Pivoris* v. *TCF Fin. Corp.*, No. 07 C 2673, 2007 WL 4355040, at *4 (N.D. Ill. Dec. 7, 2007) ("Most importantly, Plaintiff had the unfettered right to opt out of the arbitration provision."); *Ambrose* v. *Comcast Corp.*, No. 3:09-cv-182, 2010 WL 1270712, at *4 (E.D. Tenn. Mar. 31, 2010) (almost identical arbitration provision found not to be a contract of adhesion because plaintiff could opt out without any adverse effect on his relationship with Comcast); *Honig* v. *Comcast of Ga., LLC*, 537 F. Supp. 2d 1277 (N.D. Ga. 2008) ("[Plaintiff's] ability to opt out of the arbitration provision dilutes her unconscionability argument because the provision was not offered on a

9

take-it-or-leave-it basis. Courts have stressed the importance of such opt-out provisions in enforcing class action waivers in arbitration agreements." (citing cases)); *Sanders* v. *Comcast Cable Holdings, LLC*, No. 3:07-cv-918-J-33HTS, 2008 WL 150479, at *7 (M.D. Fla. Jan. 14, 2008) (almost identical arbitration provision found not to be procedurally unconscionable where, among other things, "the Arbitration Notice was not presented on a take it or leave it basis"). While the arbitration provision is hidden in the Customer Agreement, creating a degree of procedural unconscionability, it is not enough on its own to render the arbitration provision unenforceable.

## II.     Substantive Unconscionability

O'Quinn argues that the arbitration provision is substantively unconscionable as it limits his ability to obtain a remedy in a cost-effective manner, deprives him of rights available in courts, and effectively insulates Comcast from liability.[3] "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Kinkel*, 857 N.E.2d at 267. Class action waivers, such as the one contained in the Customer Agreement, are not *per se* unconscionable. *Id.* at 278. "[A] class action waiver will not be found unconscionable if the plaintiff had a meaningful opportunity to reject the contract term or if the agreement containing the waiver is not burdened by other features limiting the ability of the plaintiff to obtain a

---

[3] To the extent O'Quinn argues that the arbitration provision is substantively unconscionable because he only received the agreement after service was installed, he was only asked to acknowledge receipt of the agreement, not the arbitration provision, and his subsequent acknowledgments were made on a handheld device, these arguments have been addressed and rejected above.

10

remedy for the particular claim being asserted in a cost-effective manner." *Id.* at 274. As already discussed, O'Quinn had a meaningful opportunity to reject the arbitration provision through the opt-out procedure without repercussions. This weighs strongly against finding substantive unconscionability. *See Pivoris*, 2007 WL 4355040, at *6.

Whether O'Quinn's ability to vindicate his rights in a cost-effective manner is hampered by the class action waiver, and arbitration provision more generally, is a closer question. Under *Kinkel*, the court must consider whether "the cost of vindicating the claim is so high that the plaintiff's only reasonable, cost-effective means of obtaining a complete remedy is as either the representative or a member of a class." 857 N.E.2d at 275. Courts have generally recognized the difficulty of achieving effective redress in small-stakes consumer rights cases without the class action device. *See, e.g.*, *Deposit Guar. Nat'l Bank* v. *Roper*, 445 U.S. 326, 339, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."); *Carnegie* v. *Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30."); *Thibodeau* v. *Comcast Corp.*, 912 A.2d 874, 885 (Pa. Super. Ct. 2006) ("It is only the class action vehicle which makes small consumer litigation possible. Consumers joining together as a class pool their resources, share the costs and efforts of litigation and make redress possible. Should the law require consumers to litigate or arbitrate individually, defendant corporations are effectively immunized from redress of grievances."). At the time O'Quinn filed suit, his damages were less than $600. It is improbable that a customer would file suit

individually to recover so small an amount, particularly on a claim such as the one here where the assistance of an attorney is likely necessary. *See Keefe* v. *Allied Home Mortg.*, 912 N.E.2d 310, 319, 393 Ill. App. 3d 226, 332 Ill. Dec. 124 (2009) (average consumer unlikely to successfully litigate or arbitrate a Consumer Fraud Act claim without an attorney). The cost of pursuing a claim such as O'Quinn's on an individual basis would likely exceed his potential recovery, particularly in light of his claimed need for expert testimony.

O'Quinn, however, has not presented any specific evidence of how the costs he would incur in the arbitration are prohibitive or how he would be unable to meet them. *See Livingston* v. *Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003) ("[T]he party opposing arbitration nevertheless must provide some individualized evidence that it likely will face prohibitive costs in the arbitration at issue and that it is financially incapable of meeting those costs."); *Pivoris*, 2007 WL 4355040, at *5; *Reyes* v. *Equifax Credit Info. Servs.*, No. 03 C 1377, 2003 WL 22922190, at *4–5 (N.D. Ill. Dec. 10, 2003). On the other hand, Comcast points to various features of the arbitration provision that it claims makes individual arbitration cost-effective for the customer. For example, Comcast has agreed to advance the arbitration filing fee and arbitrator's costs and expenses upon request.[4] If the customer prevails, Comcast will not require the customer to reimburse these fees and will pay all fees and costs it is required by law to pay. This includes attorney's fees where available under the substantive law. Attorney's fees and costs are available to O'Quinn if he prevails on his claim, as the Consumer Fraud Act specifically allows for such an award. 815 Ill. Comp. Stat. 505/10a(c); *Krautsack* v. *Anderson*,

---

[4] Neither party has presented the court with information regarding the potential costs of arbitration.

861 N.E.2d 633, 647, 223 Ill. 2d 541, 308 Ill. Dec. 302 (2006) (a plaintiff may recover attorney's fees under Section 10a(c) without a showing of the defendant's bad faith). Although less likely than as a class representative, with attorney's fees available, O'Quinn may be able to find a lawyer willing to represent him on his individual claim in arbitration. *See, e.g.*, *Jenkins* v. *First Am. Cash Advance*, 400 F.3d 868, 878 (11th Cir. 2005) ("[W]hen the opportunity to recover attorneys' fees is available, lawyers will be willing to represent such debtors in arbitration."); *Snowden* v. *CheckPoint Check Cashing*, 290 F.3d 631, 638 (4th Cir. 2002) (where plaintiff could recover attorney's fees pursuant to the underlying statute, enforcement of class action waiver was not unconscionable); *Johnson* v. *W. Suburban Bank*, 225 F.3d 366, 374 (3d Cir. 2000) (where statutory attorney's fees are available, enforcing class action waiver will not "necessarily choke off the supply of lawyers willing to pursue claims on behalf of [individual plaintiffs]"); *Sanders*, 2008 WL 150479, at *8–10 (collecting cases); *cf. Dale* v. *Comcast Corp.*, 498 F.3d 1216, 1224 (11th Cir. 2007) ("[B]ecause the Cable Act does not provide for the recovery of attorneys' fees or related costs for the violations alleged by the subscribers, . . . it will be difficult for a single subscriber to obtain representation.").

Comcast also points to other provisions it claims make arbitration consumer-friendly. For example, the arbitration is to proceed in a location convenient for the customer and the customer may elect to proceed in small claims court instead of through arbitration. Following *Kinkel*, the option to bring suit in small claims court does not compel a finding that a class action waiver is not substantively unconscionable. 857 N.E.2d at 276. The arbitration provision does not include a requirement that any decision remain confidential. This favors Comcast's position. *See Powell* v. *Payday Loan Store of Ill., Inc.*, No. 09 C 4146, 2010 WL 3893894, at *6 (N.D. Ill.

13

Sept. 28, 2010); *cf. Kinkel*, 857 N.E.2d at 275 (confidentiality clause burdens an individual's ability to vindicate a claim). Considering the balance of the terms and the customer's ability to opt out of the provision without repercussions, the class action waiver is not unconscionable.

O'Quinn also argues that the arbitration provision is substantively unconscionable because it deprives him of rights available in court. Damages limitations are not *per se* unconscionable, however, and, here, the limitation applies "unless the statute under which [the parties] are suing provides otherwise." Customer Agreement at 23. Punitive damages are authorized by the Consumer Fraud Act, *Tortoriello*, 882 N.E.2d at 179, and so the limitation would not apply in this case. As the damages limitation is severable, the disclaimer of punitive damages does not make the entire arbitration provision unconscionable. Customer Agreement at 23; *Tortoriello*, 882 N.E.2d at 179–80. O'Quinn also complains of the arbitration provision's limited appeal right, which allows for an appeal only when the award exceeds $75,000 and imposes costs on the losing party. Whereas a litigant would have an unfettered right to appeal in court, an arbitral award is final and subject to only limited review in a court. The appeal limitation, however, is not necessarily inconsistent with the goals of arbitration. "As the Supreme Court has explained, the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer 'simplicity, informality, and expedition,' characteristics that generally make arbitration an attractive vehicle for the resolution of low-value claims." *Iberia Credit Bureau, Inc.* v. *Cingular Wireless LLC*, 379 F.3d 159, 174 (5th Cir. 2004) (quoting *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)). Because the totality of the circumstances does not warrant a

14

finding of substantive unconscionability, the court will order O'Quinn to arbitrate his claim on an individual basis.

## CONCLUSION AND ORDER

For the foregoing reasons, Comcast's motion to compel arbitration [#14] is granted. This case is stayed pending arbitration.

Dated: November 29, 2010        Enter:_____
                                       JOAN HUMPHREY LEFKOW
                                       United States District Judge